439 So.2d 1194 (1983)
Jacque D. SMITH et al.
v.
FORMICA CORPORATION.
No. 82-CA-1025.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*1195 W. Arthur Abercrombie, Jr., Ashley Moore, Baton Rouge, for plaintiffs.
William F. Bologna, New Orleans, for defendant.
*1196 Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
This is a products liability case. Plaintiffs were awarded $85,793.91 in damages for the destruction of their house camp and for minor injuries suffered by Jacque Smith and her two daughters, Brenda and Glenda, in a flash fire which occurred on April 1, 1978. Alleging manifest error, the defendant Formica Corporation (Formica) suspensively appealed the trial court's finding of liability.[1] We reverse.
In July, 1974, L.D. Smith, husband of Jacque Smith, scavenged the one-gallon can of Formica Brand 140 contact adhesive from a construction site in Mississippi, where as loan officer for Louisiana National Bank he was supervising the foreclosure of an apartment complex. He stored it at his camp in Livingston Parish, where it remained unopened and unused until the day of the accident.
On the morning of April 1, 1978, after reading the "Directions for Use" on the can and opening all the windows and doors in accordance with the instructions to ventilate the area, Jacque, with the help of her daughters Brenda and Glenda, used the adhesive to lay some linoleum in the bathroom. The Smiths, however, failed to extinguish the pilot light in the bathroom hot water heater. The fumes of the adhesive came into contact with the pilot light and erupted in a flash fire, causing the aggrieved damages.
In imposing liability on Formica, the trial judge made the following three findings of fact, among others:
4. Though the label of this one-gallon container of Formica Brand 140 Adhesive stated to ventilate the area where the product was being applied, the label did not state and warn to extinguish all external sources of flame, including pilot lights.
5. The court finds Formica Brand 140 Adhesive to be unreasonably dangerous and defective because any cautionary labeling, which may have been contained on this one-gallon container of Formica Brand 140 Adhesive, was inadequate and incapable of warning and protecting Jacque D. Smith, Brenda F. Smith and Glenda R. Smith against the inherent risk of harm associated with its normal use, due to the dangerous properties inherent in its chemical composition.[2]
6. Although Formica Corporation removed Formica Brand 140 Adhesive from the ordinary consumer market in 1976,... the Consumer Product Safety Commission banned all extremely flammable contact adhesives from the ordinary consumer market effective January 18, 1978.... (footnote added)
The defendant contends that the trial court committed manifest error in finding that the product contained no warning concerning pilot lights, that the product was unreasonably dangerous due to its chemical composition, and that the Consumer Products Safety Commission banned all contact adhesives effective January 18, 1978.[3]
Thus, two issues are presented by this appeal: Did the can of Formica 140 in question in fact contain a warning concerning pilots lights? If so, was Formica 140 *1197 nonetheless defective, that is, unreasonably dangerous to normal use, solely by virtue of its chemical composition.

ISSUE NO. 1
We note that the plaintiffs in a products liability suit, as in any civil suit except where the law provides otherwise, must prove each fact material to his case by a preponderance of the evidence, which means that the evidence as a whole must prove that the existence of each fact alleged is more probable than not. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331, 1334 (La.1976). Moreover, under the standard of appellate review of facts enunciated in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), an appellate court should not disturb a finding of fact unless the record as a whole establishes that the finding was clearly wrong. A careful review of the record and of the evidence presented by both the plaintiffs and the defendant convinces us that the plaintiffs failed to carry their burden of proof that the label on the can of Formica Brand 140 Adhesive did not contain a warning to extinguish all pilot lights.
At trial, proof that the label contained no warning to extinguish pilot lights consisted solely of the testimony of the plaintiffs, L.D. and Jacque Smith, and an undated advertisement, identified and introduced into evidence as "P-6", depicting a miniature of the front panel of a Formica Brand 140 can without the typical precautionary labeling above the Formica logo.[4] Jacque testified that she had read the directions on the can L.D. had given her and that she fully understood what she read. She "distinctly" remembered that the back panel of the label contained instructions regarding ventilation. She did not recall whether the label contained any warning regarding flames or pilot lights. She positively testified that the back panel of the label contained no color differentiation and no offsets. The directions which she read consisted solely of black type on a white background in two vertical columns running from the top of the can to the bottom.
L.D. testified that he also read the directions on the can and remembered language concerning ventilation, which prompted him to open all the windows and doors in the camp. He, in fact, removed the bathroom door from its hinges to facilitate ventilation. Contrary to Jacque's testimony, he admitted that the label may have contained the word "flammable" on the front or the back but testified that at the time of the accident he did not know what "flammable" meant. He did not recall seeing any language about pilot lights. On cross-examination, L.D. drew a facsimile of the back panel he remembered to be on the can. The drawing was identified and introduced into evidence as Formica 11.[5] Formica 11 closely resembles the back panel of the can of Formica 140 depicted in Formica 4B, a scale color photograph of the label of a can of Formica 140 introduced into evidence by Formica (see below).
Formica's proof that the label of the can of Formica Brand 140 Adhesive did in fact contain a warning to extinguish pilot lights consisted primarily of the testimonies of C. Boyd Shaffer and Glenn E. Lucas, and the deposition testimony of Kenneth Carroll, introduced into evidence without objection, and two scale color photographs (identified and introduced into evidence as Formica 4A *1198 and 4B) of the warning and labeling format that appeared on all one-gallon cans of Formica 140 manufactured between 1967 and 1974.
Dr. C. Boyd Shaffer, a chemist and present toxicology consultant, was appointed to the American Cyanamid Label Committee in 1957 and served as Committee Chairman from 1964 until his retirement in 1980. This four-person committee was responsible for formulating all warnings and labels placed on products manufactured by Formica Corporation, a subsidiary of American Cyanamid Company. As Chairman, Dr. Shaffer was personally familiar with the warning and labeling format that appeared on all one-gallon cans of Formica 140 manufactured from 1967 to 1974. He affirmatively testified that the warning language adopted by the committee in 1964 to be placed on all labels of Formica 140, based upon the standards enunciated by the Labels and Precautionary Information Committee of the Manufacturing Chemists Association, specifically warned and instructed users to turn off pilot lights. He further testified that the language adopted by the committee in 1970 complied with the Federal Hazardous Substances Act[6] and, as required, stated that vapors may cause flash fires and instructed the users to extinguish pilot lights. He also testified that the committee in 1972 adopted language, not required by regulation, that instructed the users to extinguish all static sparks.
Dr. Shaffer identified Formica 4A and 4B as true facsimiles of the front and back panels of the labels used on all one-gallon cans of Formica 140 from 1967 to 1974. He specifically testified that never during the period in question did the back panel consist solely of dual columns of printing from top to bottom. Moreover, the warning language was always presented in a horizontal block across the top of the can and differentiated from the rest of the panel by the color red. He unequivocally testified that during 1967 to 1974 the label committee never approved of back panel warning language that instructed the user to ventilate the area, without also instructing the user to extinguish all external sources of flame, including pilot lights.[7]
On cross-examination, Dr. Shaffer was questioned about "P-6". While agreeing that the picture of the front panel did not exhibit the usual precautionary language above the Formica logo,[8] he explained that such advertising literature was not required to exhibit such precautionary labeling under the provisions of 16 C.F.R. 1500.3B(12) of the Rules promulgated by the Consumer Product Safety Commission.[9]
*1199 Dr. Shaffer's testimony was fully corroborated by the testimony of Glenn E. Lucas, a 16-year Operations Manager of Roberts Consolidated Industries, a manufacturer who supplied Formica 140 to American Cyanamid from 1967 to 1974, and the deposition testimony of Kenneth Carroll, a 25-year Technical Services Manager for Bond Masters Products at National Starch and Chemical, a manufacturer which also supplied Formica 140 to American Cyanamid during the period in question. Mr. Lucas' duties familiarized him with the labeling procedures used in connection with Formica 140. From his personal knowledge, Mr. Lucas identified 4A and 4B as true facsimiles of the label used on cans of Formica 140 from 1967 to 1974. He testified that he never recalled Roberts either purchasing or using a can that warned to ventilate without also warning to extinguish pilot lights. Also familiar with the quality controls used by his company to insure compliance with the labeling requirements of American Cyanamid, he stated it was "inconceivable" that an improperly labeled can of Formica 140 could leave the Roberts manufacturing plant.
Mr. Carroll was a member of National Starch and Chemical's five-person Labeling Committee during the time in question. He testified that American Cyanamid designed the Formica labels and forwarded them to his company, which in turn forwarded them to its lithographer, Sherwin-Williams. He also, like Mr. Lucas, testified that it would be "virtually impossible" for National Starch to manufacture an improperly labeled can, and that to his knowledge, no improper labeling had ever occurred.
Two operative evidentiary rules, when applied to the facts of this case, clearly call for a reversal. First, "when there are witnesses of equal credibility in direct contradiction on a fact question, the positive or affirmative testimony will be given preponderance over that which is negative." Tom Slay, Incorporated v. Continental Casualty Company, 321 So.2d 863, 867 (La.App. 1st Cir.1975), writ refused, 324 So.2d 433 (La.1976); Sholar v. U.S. Fire Insurance Company, 261 So.2d 327 (La.App. 1st Cir. 1972); see also LeBlanc v. Cordaro, 378 So.2d 1027 (La.App. 2nd Cir.1979); Jamison v. Reese Variety Stores, Inc., 203 So.2d 859 (La.App. 2nd Cir.1967). Second, the testimony of a disinterested witness is accorded greater weight than that of an interested witness. Mitchell v. Sigrest, 345 So.2d 141 (La.App. 1st Cir.1977), citing Alexander v. St. Paul Fire & Marine Ins. Co., 312 So.2d 139 (La.App. 1st Cir.1975).
The testimonies of Mr. and Mrs. Smith are sufficiently contradictory on at least two pointsthe configuration of the printed directions on the back panel of the label and the presence (or absence) of the word "flammable" on either the front or back of the labelto cast a reasonable doubt on their testimony concerning the absence of a warning.[10] However, even if we assume the plaintiffs' credibility to be equal to that of the defendant's witnesses, the plaintiffs' negative testimony that no warning was present on the label must be given less weight than the positive testimony of the defendant's disinterested witnesses.
As we stated in Alexander v. St. Paul Fire & Marine Ins. Co., 312 So.2d 139, 144 (La.App. 1st Cir.1975), writ denied, 313 So.2d 846 (La.1975):
It is a basic law that plaintiff must prove his case by a preponderance of evidence. Preponderance of evidence means *1200 evidence which is of greater weight or which is more convincing than evidence offered in opposition thereto, and which, because it best accords with reason and probability, or which because of its more convincing nature and quality, best tips the scales of justice in favor of the party upon whom the burden rests.
For the foregoing reasons, we reverse the trial court and find that the can of Formica 140 Adhesive used by the Smiths on the day of the accident did in fact contain a warning to extinguish all flames and pilot lights.

ISSUE NO. 2
In their brief, plaintiffs place considerable reliance on two out-of-state decisions, of which only one need be discussed, and on the trial court's finding that Formica 140 was a banned hazardous substance on the date of the accident in support of their proposition that Formica 140 was unreasonably dangerous to normal use solely by virtue of its chemical composition.
First, the trial court's finding that Formica 140 was banned by the Consumer Product Safety Commission on the date of the accident was clearly wrong. Title 16 C.F.R. 1302.4 specifically provides:
Any extremely flammable contact adhesive and similar liquid or semi-liquid consumer product as defined in section 1302.3(b), which has been manufactured or initially introduced into commerce after January 17, 1978, is a banned hazardous product. In addition, any other extremely flammable contact adhesive and similar liquid or semi-liquid consumer product, as defined in section 1302.3(b), no matter when manufactured or initially introduced into commerce, is a banned hazardous product after June 13, 1978.
The can of Formica 140 in question was manufactured some time prior to the summer of 1974. Therefore, it did not become a "banned hazardous product" until June 13, 1978, after the date of the accident, April 1, 1978.
Moreover, the plaintiff has the burden of proving that the product is unreasonably dangerous both at the time of the accident and at the time the product left the hands of the manufacturer. The defendant's conduct must be judged according to the conditions and circumstances existing at the time of the occurrence of the accident and must be measured on the basis of standards applicable at that time. Landry v. Adam, 282 So.2d 590 (La.App. 4th Cir.1973). We think that evidence of post-accident federal regulatory changes is irrelevant to a determination of whether a product is unreasonably dangerous at the time the plaintiff suffers injury.
Second, in Ruggeri v. Minnesota Mining & Manufacturing Company, 63 Ill.App.3d 525, 20 Ill.Dec. 467, 380 N.E.2d 445 (1978), the plaintiff's decedent was fatally injured when the fumes of a contact adhesive known as "Red 33" were ignited by a pilot light in a furnace close to where the decedent was cleaning the adhesive from the pressure tank of a compressed air spray gun. The adhesive container contained a warning to extinguish all pilot lights. Finding the warning to be adequate, the Illinois appellate court affirmed the jury's finding that the adhesive was nonetheless too flammable and volatile for its foreseeable use and therefore unreasonably dangerous.
We do not feel compelled in this case to follow the lead of the appellate court of Illinois and adopt a rule of law that would impose absolute liability on a consumer products manufacturer. The Louisiana Supreme Court has reserved absolute liability for ultrahazardous activities (such as pile driving, storage of toxic gas, etc.). See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).[11] A manufacturer is liable to any purchaser or third person who proves that the product causing injury was *1201 defective, that is, unreasonably dangerous to normal use. Weber v. Fidelity and Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971). The words "unreasonably dangerous" were included in the definition of "defect" in products liability cases to prevent manufacturers from becoming insurers of their products. DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26, 30 (La.1981).
A products liability action in Louisiana lies in negligence. It is only because of the manufacturer's presumed knowledge of the dangerous propensities of his product that the manufacturer is said to be strictly liable to the plaintiff. Kent v. Gulf States Utilities Co., 418 So.2d at 498, n. 6; Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983) (citing Hunt v. City Stores Inc., 387 So.2d 585 (La.1980) as a traditional negligence case).
If a product has dangerous propensities, which a manufacturer is presumed to know, and which render the product unreasonably dangerous to normal use, the manufacturer is negligent, and therefore liable, in failing to give a warning adequate to apprise the user of the specific risk of harm encountered by that user during the use of the product. See Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Chappuis v. Sears Roebuck, Inc., 358 So.2d 926 (La.1978); Andries v. General Motors Corp., Delco Batteries, 417 So.2d 479 (La. App. 1st Cir.1982); Hudgens v. Interstate Battery Systems, etc., 393 So.2d 940 (La. App. 3rd Cir.1981). It is this failure to warn, or the breach of the duty to warn, that renders the product unreasonably dangerous to normal use and results in liability.
The specific risk of harm encountered by the Smiths was the risk of fire resulting from an exposed pilot light in the Smiths' bathroom hot water heater. Whether a remote source of flame, such as a stray spark or a cigarette, may also have created a risk of harm is based upon a hypothetical situation different from the factual pattern before us. Since the risk of harm encountered was the very risk of harm specifically warned against by Formica, we find that the plaintiffs failed to prove that the product was unreasonably dangerous to normal use.
The decision of the trial court is reversed.
Costs to be borne by plaintiffs-appellees.
REVERSED.
*1202 
NOTES
[1] American Home Assurance Company, Formica's insurer and solidary co-obligor, has not appealed the final judgment which is now definitive as to it.
[2] The trial court further found that Formica 140 is an "extremely flammable" contact adhesive with a flash point of less than 0 degrees Farenheit, which means that at or above 0 degrees F. the adhesive will evaporate and form a combustible vapor ignitable if exposed to open flames or sparks. Moreover, due to their high density (2.8 times that of air), the vapors tend to sink and accumulate along the floor where exposed sources of flame, such as pilot lights, tend to be. Thus, any remote source of flame such as a stray spark or cigarette could ignite the vapors and cause a flash fire.
[3] Formica argues alternatively for an affirmance of the trial court's damage awards. The plaintiffs answered the defendant's appeal seeking an affirmance of liability but an increase in the damage awards. Since we reverse the trial court's finding of liability, we will not discuss the issues of quantum.
[4] For purposes of our review, we disregard the testimony of plaintiffs' expert, Dr. Jendrzejewski, who performed a comparative analysis of the labels of the pre-1974 one-gallon can used by the Smiths on the date of the accident and a five-gallon can of Formica 140, manufactured in 1979, each label depicted respectively in a black-and-white photograph identified as "P-9" and a glossy color photograph identified as "P-13". The trial court properly denied the introduction into evidence of "P-9" and "P-13" since any comparison between the label on the pre-accident can and the label on the post-accident can, which the defendant concedes used a different format, is clearly irrelevant in proving the existence or nonexistence of a warning on the can in question. Since Dr. Jendrzejewski's testimony is based upon properly excluded evidence, it is also irrelevant to the issue before us.
[5] See Appendix I. The "X" in the middle of the drawing shows where L.D. Smith read the "Directions For Use."
[6] 15 U.S.C. 1261, et seq.
[7] The warning label identified and depicted in 4B reads as follows:

DANGER: EXTREMELY FLAMMABLE MIXTURE. VAPORS MAY CAUSE FLASH FIRE.
Vapors may ignite explosively. Vapors harmful. Prevent buildup of vaporsopen all windows and doorsuse only with cross ventilation. Keep away from heat, sparks, and open flame. Do not smoke. Extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition (including static sparks) during use and until all vapors are gone. Close container after use. Do not take internally. Avoid prolonged or repeated inhalation or skin contact.
USE ONLY IN WELL VENTILATED AREA KEEP OUT OF REACH OF CHILDREN
Hazardous Ingredients: Methyl Ethyl Ketone, Toluene, Petroleum Distillate.
[8] Such language, depicted in 4A, reads:

EXTREMELY FLAMMABLE. VAPORS MAY CAUSE FLASH FIRE. VAPORS HARMFUL. READ CAREFULLY OTHER CAUTIONS ON BACK PANEL.
[9] "Label" means a display of written, printed, or graphic matter upon the immediate container of any substance or, in the cases of an article which is unpackaged or is not packaged in an immediate container intended or suitable for delivery to the ultimate consumer, a display of such matter directly upon the article involved or upon a tag or other suitable material affixed thereto. A requirement made by or under authority of the act that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears (i) on the outside container or wrapper, if any there be, unless it is easily legible through the outside container or wrapper and (ii) on all accompanying literature where there are directions for use, written or otherwise. 16 C.F.R. 1500.3B(12)

Plaintiffs' counsel attempted to impeach Dr. Shaffer's credibility by the absence in "P-6" of any reference to such precautionary language, including the words "extremely flammable," as required by 16 C.F.R. 1500.133(b). Whatever relevance an undated advertisement may have, our review of "P-6" reveals that it does in fact contain such language in the last paragraph entitled PRECAUTION on the backside of the advertisement. Specifically, the paragraph reads in part: "FORMICA brand contact adhesive # 140 is flammable. Keep away from heat, sparks and open flame."
[10] Mrs. Smith testified that the directions ran from top to bottom; Mr. Smith, that they ran up only halfway. We also find incredulous Mr. Smith's statement that he was ignorant of the meaning of the word "flammable."
[11] For these particular activities, Louisiana courts have imposed absolute liability ... which virtually makes the enterpriser an insurer. The enterpriser, whether or not negligent in any respect, caused the damage, and the injured party recovers simply by proving damage and causation. Kent v. Gulf States Utilities Co., 418 So.2d at 498.