CARTER, Judge.
This is a suit for damages arising out of an apartment fire.
FACTS
On March 17, 1985, plaintiff, Ralph Lir-ette, and his wife, accompanied by several friends, spent the. day in New Orleans. Thereafter, the Lirettes, Cary DeRoach, and Liana Castells returned to the Lirettes’ small apartment in Houma where they indulged in alcoholic beverages and played card games.
About 10:00 p.m., Sharon Lirette left the group to take a bath and went to sleep a short time later. Ralph then joined his wife in the bedroom, leaving DeRoach and Castells in the living room. Prior to retiring the Lirettes had given Castells, who was spending the evening at the Lirette apartment, two blankets to facilitate her use of the couch. One of the blankets, which had been purchased from TG & Y, was a Christmas gift from Ralph’s grandmother.
DeRoach and Castells remained in the Lirette living room watching television until almost 1:00 a.m. when DeRoach left. Castells then settled onto the couch to sleep, however, she apparently fell asleep while smoking a cigarette. Shortly thereafter, the couch ignited, and the apartment quickly burned.
Ralph awoke to a smoke-filled room and woke Sharon. Both proceeded to the bathroom, where Sharon opened the window and escaped. Ralph, after getting his wife safely out of the burning apartment, proceeded to locate Castells. However, he was quickly overcome by fumes. As a result of the fire, Liana Castells died, and Ralph Lirette suffered burns and serious injury to his lungs.
On July 18, 1985, plaintiff filed the instant suit for damages against State Farm Insurance Company (State Farm). State Farm issued a homeowner’s policy to Liana Castells’ mother.[1] In his petition, plaintiff alleged that the negligence of Liana Cas-tells caused the fire.[2] Thereafter, on March 14, 1986, plaintiff filed a supplemental petition, naming numerous other defendants. Plaintiff alleged that a blanket, manufactured by a Spanish company, distributed by TAC Industries Marketing, Inc. (TAC), and sold through the TG & Y Stores, then owned by Household Merchandising, Inc. and now owned by McCrory Stores, a subsidiary of McCrory Corporation, which is owned by Rapid American *1367 (collectively referred to as TG & Y), was defective. Plaintiff alleged that these defendants were strictly liable or, alternatively, negligent in failing to determine the dangerous composition of the blanket and in failing to warn prospective purchasers and users of its dangerous propensities. Plaintiff also alleged that Thomas Cobb, owner of the Lirette apartment, was negligent for failing to have safe access to fire escapes and for failing to provide a warning system.
TG & Y answered, denying liability and pleading plaintiffs contributory negligence. TG & Y also filed a third party demand against TAC and State Farm.[3] Thereafter, plaintiff again supplemented his petition, naming as an additional defendant Royal Insurance Company of Puerto Rico, Inc. (Royal), insurer of TAC. TAC answered plaintiffs petitions, denying liability and pleading the negligence of Cas-tells, Cobb, and plaintiff. Numerous other demands were also filed.
During the trial, the judge directed a verdict in favor of plaintiff on the issue of contributory negligence. After a jury trial, the jury determined that TAC, TG & Y, and Liana Castells were negligent and. that their negligence caused plaintiffs injuries. The jury also determined that the blanket was defective, which caused plaintiffs injuries.[4] The jury assigned fault as follows: (a) TAC 28%; (b) TG & Y 23%; and (c) Liana Castells 49%. The jury then assessed damages at $675,000.00. Thereafter, the trial court rendered judgment in favor of plaintiff and against TG & Y, TAC, and Royal for $675,000.00. Motions for new trial were denied.
From these adverse judgments, TG & Y, TAC, and Royal appeal, assigning the following errors:
I.The jury committed manifest error in finding that hydrogen cyanide gas caused injury to plaintiff’s lungs where there was no medical testimony relating plaintiffs injury to hydrogen cyanide gas.
II.The jury committed manifest error in finding that plaintiff proved by a preponderance of the evidence that hydrogen cyanide gas from the blanket in question caused injury to plaintiff.
III.The jury committed manifest error in finding liability on T.G. & Y. Stores, the distributor of the blanket, where there was no evidence to suggest that T.G. & Y. Stores knew or should have known of a defect in the blanket and failed to declare it to the purchaser.
IV.The trial court committed manifest error in granting plaintiff a directed verdict as to the issue of his own negligence.
*1368 V. The trial court committed manifest error in not allowing a credit for the percentage of fault assigned to Liana Castells where her insurer settled with the plaintiff prior to trial.
BURDEN OF PROOF AND THEORIES OF RECOVERY
In a products liability action, the plaintiff has the burden of proving:
(1) That there was a defect in the product which existed at the time of manufacture;
(2) That the product was in normal use at the time of the accident;
(3) That the product was unreasonably dangerous; and
(4) That the plaintiffs injury was caused by the defect in the product.
Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985); Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971).
A defendant’s conduct is actionable where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that but for the defendant’s conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Landry v. State Farm Insurance Company, 529 So.2d 417 (La.App. 1st Cir.1988); Stephens v. Pacific Employers Insurance Company, 525 So.2d 288 (La.App. 1st Cir.1988), writ denied, 532 So.2d 116 (La.1988); Edwards v. City of Leesville, 465 So.2d 263, writ denied, 467 So.2d 539 (La.1985). There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm which occurs and it is substantial in nature. Landry v. State Farm Insurance Company, supra; Nix v. Brasly, 489 So.2d 1038 (La.App. 1st Cir.1986); Bodoin v. Daigle, 452 So.2d 828 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 485 (La.1984). However, whether the plaintiff seeks recovery under a negligence or strict liability theory, he must prove that the negligent act or defect complained of was a cause in fact of the injury. Edwards v. City of Leesville, supra.
Generally, a products liability action in Louisiana lies in negligence; however, under strict liability, a manufacturer is presumed to know of the dangerous propensities of his product. Entrevia v. Hood, 427 So.2d 1146 (La.1983), (citing Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980) as a traditional negligence case); Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Marshall v. Beno Truck Equipment, Inc., 481 So.2d 1022 (La.App. 1st Cir.1985), writs denied, 482 So.2d 620 (La.1986); Smith v. Formica Corporation, 439 So.2d 1194 (La.App. 1st Cir.1983).

A. Strict Liability

In Weber v. Fidelity & Casualty Insurance Company of New York, supra, the Louisiana Supreme Court enunciated the law of strict liability for manufacturers of defective products as follows:
A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that, the plaintiffs injuries were caused by reason of the defect.
[[Image here]]
If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them. (Emphasis provided) [250 So.2d at 755-756],
*1369 In Kent v. Gulf States Utilities Company, supra, the Louisiana Supreme Court observed:
In products liability cases, the manufacturer is presumed to know the dangerous propensities of its product and is strictly liable for injuries resulting from the product’s unreasonable risk of injury in normal use. The claimant nevertheless must prove that the product presented an unreasonable risk of injury in normal use (regardless of the manufacturer’s knowledge), thus in effect proving the manufacturer was negligent in placing the product in commerce with (presumed) knowledge of the danger. (Emphasis provided) [418 So.2d at 498, n. 6],
In other words, in a strict products liability suit, it is not required that the plaintiff establish that the manufacturer has been negligent in the design or manufacture of the product. The claimant is required to prove merely the existence of a defect and the causal link between that defect and the injuries complained of. Marshall v. Beno Truck Equipment, Inc., supra.

B. Negligent Liability

In a negligence cause of action, it is the plaintiff's burden to prove that the manufacturer knew or should have known that its product created an unreasonable risk of harm. Marshall v. Beno Truck Equipment, Inc., supra; Brumley v. Firestone Tire & Rubber Company, 459 So.2d 572 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 1267 (La.1985).
In Kent v. Gulf States Utilities Company, supra, the Louisiana Supreme Court noted:
In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm. [418 So.2d at 497].
The major distinction between the two theories of recovery lies in the fact that the inability of a defendant to know or prevent a risk is not a defense in a strict liability case, but precludes a finding of negligence. Entrevia v. Hood, supra; Hunt v. City Stores, supra; Lowers v. Commercial Union Ins. Co., 435 So.2d 575 (La.App. 3rd Cir.1983).
On appeal, defendants, TG & Y, TAC, and Royal, contend that the plaintiff failed to prove that the alleged defect in the blanket caused plaintiff’s injuries. Defendants reason that, because the evidence established that the blanket produced hydrogen cyanide gas and that plaintiff’s injuries were caused by isocyanate gas, the blanket did not cause plaintiff’s injuries.
George Pappas, a chemical engineer, testified on plaintiff’s behalf. Pappas conducted various tests on portions of a companion blanket.[5] Pappas determined that the blanket was made of moda acrylic fibers, which gave off hydrogen cyanide gas upon combustion. Pappas further testified that if polyurethane burns, hydrogen cyanide is released, and that if there were other acrylic products in the apartment, they would also have released hydrogen cyanide gas. He stated, however, that he had not examined any products that had been burned in the fire.
Otha John Jacobus, a professor of chemistry, also testified on behalf of plaintiff. *1370 Jacobus tested a portion of the companion blanket. Jacobus determined the blanket was 60% acrylonitrile and 40% acrylic esther. The acrylonitrile, upon decomposition by heat, becomes hydrogen cyanide gas, whose chemical formula is HCN. Jacobus determined that, given the findings by the coroner, the hydrogen cyanide released from the blanket contributed to Castells’ death. Jacobus also testified that in extremely high temperatures a wool blanket will burn, also releasing hydrogen cyanide gas. Jacobus acknowledged that polyurethane foam, found in many couches, also produces hydrogen cyanide gas upon combustion. Jacobus also testified regarding isocyanate gas, whose chemical formula is HCNO, which differs somewhat from hydrogen cyanide gas. Varnishes, urethanes, and other household items in the Lirette apartment could have released isocyanate gas.
George S. Buck, a textile fire safety engineer,. testified on behalf of defendants. Buck did not perform any tests on the companion blanket personally, but accepted the determination by plaintiffs experts that the blanket was made of 100% acrylic, which is known to give off toxic gases. Buck acknowledged that this particular blanket, upon combustion, would produce hydrogen cyanide gas, which is toxic; carbon monoxide, which is toxic; carbon dioxide, which is toxic; and water. Buck also testified that the blanket in question could not produce isocyanate gas. Buck stated that isocyanates do not result from a decomposition of a cyanide. Buck related that the two gases have a totally different chemical arrangement. Countertops, plastics, and textiles release hydrogen cyanide gas upon combustion, and polyurethane foam, varnish, and television eases release isocyanates. Buck also acknowledged that the death of Castells and plaintiffs injuries resulted from toxic gases.
Dr. Bernard Brach, a pulmonologist, testified on behalf of plaintiff. Dr. Brach determined that plaintiff suffered from airway disease and obstruction, which was caused by chemical damage. Dr. Brach testified that derivatives of cyanate, not hydrogen cyanide, have been shown to cause airway disease and that a cyanate derivative probably played a part in plaintiffs injuries. Dr. Brach stated that, he could find nothing in the literature that said hydrogen cyanide causes airway obstruction, however, his research revealed that cyanates, of which isocyanate is a derivative, are associated with airway disease.
After thoroughly reviewing the entire record, we find that, although hydrogen cyanide can kill and probably played a substantial part in the death of Liana Castells, the evidence does not establish that plaintiffs lung injuries were caused by hydrogen cyanide. The evidence does establish, however, that isocyanate gases cause airway disease such as that suffered by plaintiff. The expert witnesses all agreed that the only gas produced by the blanket was hydrogen cyanide, that hydrogen cyanide gas is toxic, and that numerous other household items also produced hydrogen cyanide gases when the apartment was engulfed in flames. Buck testified that the blanket could not produce isocyanate gases and that isocyanate gases do not result from a decomposition of a cyanide. Further, all of the experts testified that numerous household items could have released isocyanate gas during the fire. The only witness who testified regarding the cause of plaintiffs physical injuries was Dr. Brach. Dr. Brach testified that the airway obstruction and disease was caused by a derivative of cyanate and that the literature clearly shows that isocyanates cause airway obstruction. Dr. Brach also testified that his research revealed that hydrogen cyanide did not cause airway obstruction and disease.
Clearly, the jury was manifestly erroneous in finding that plaintiffs injuries were caused by the hydrogen cyanide gas produced by the blanket. Having found that the plaintiff failed to prove that his injury was caused by the defect in defendants’ product, we find it unnecessary to address the other errors assigned by defendants.
CONCLUSION
For the above reasons, the judgment of the trial court in favor of plaintiff and *1371 against TG & Y, TAC, and Royal is reversed. Plaintiff is cast for all costs.
REVERSED.

. At the time of the incident, Liana Castells was seventeen years old.

. By joint motion to dismiss, plaintiff, having compromised his claims against State Farm, voluntarily dismissed State Farm.

. State Farm filed an exception pleading the objections of res judicata and no cause of action to TG & Y’s third party demand and a motion for summary judgment. By judgment, dated May 1, 1987, the trial court granted State Farm’s motion for summary judgment and dismissed TG & Y’s third party demand against State Farm.

. The jury verdict provides, in pertinent part, as follows:
1. (a) Was defendant, TAC Industrial Marketing, Inc., negligent?
YES ✓ NO_
(b)If yes, was that negligence a proximate cause of Ralph Lirette’s injuries?
YES ✓ NO_
2. (a) Was defendant, T.G. & Y. Stores, Inc., negligent?
YES ✓ NO_
(b) If yes, was that negligence a proximate cause of Ralph Lirette’s injuries?
YES ✓ NO
3. (a) Was Liana Castells negligent?
YES ✓ NO_
(b) If yes, was that negligence a proximate cause of Ralph Lirette’s injuries?
YES ✓ NO_
4. (a) Was the blanket defective?
YES ✓ NO_
(b) If yes, was the injury suffered by Ralph Lirette caused by that defect?
YES ✓ NO_
(c) If yes, was there adequate warning of the defect?
YES_ NO ✓
(d) If yes, was the injury suffered by Ralph Lirette caused by the inadequate warning?
YES_ NO ✓
(e) If yes, did T.G. & Y, Inc., know of the
defect at the time of the sale of the product?
YES NO ✓

. Plaintiffs grandmother had purchased several blankets for her grandchildren, including one identical to the one destroyed in the fire. The companion blanket was used by the experts to conduct various tests.