627 So.2d 177 (1993)
Johnny JOHNSON and Selena B. Johnson, Individually and On Behalf Of Their Minor Children, Joni S. Johnson and Shannon A. Johnson
v.
LOWES OF LOUISIANA, INC., D/B/A Lowes of Thibodaux and MTD Products, Inc.
No. CA 91 0982.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Rehearing Denied April 28, 1993.
*178 Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
In this products liability suit, the defendant manufacturer appeals a judgment entered by the trial court on a jury verdict in favor of plaintiffs. Before this court, raised by appeal and by answer to the appeal, are issues of liability and quantum. We reverse.

BACKGROUND FACTS
Johnny Johnson purchased a new MTD Products, Inc. (MTD) riding lawn mower from Lowes of Thibodaux (Lowes) on April 13, 1988. The mower was equipped with an 11 horsepower, Model 25 engine that was manufactured by Briggs & Stratton Corporation. A dipstick had been installed on the engine by MTD. After the purchase, employees of Lowes put oil and gasoline into the mower, helped Johnson load it into his truck, and recommended that he add a small amount of oil after approximately one-half hour of running time. Johnson took the mower home and began mowing his grass. The mower seemed to operate normally until it ran out of gasoline. Johnson filled the tank and added a small amount of oil. He, then, resumed mowing the lawn. After mowing for approximately one-half hour longer, Johnson noticed smoke and, then, fire coming from the muffler. Johnson stood up to get off the mower and fell to the ground, injuring his back.
Johnny Johnson and his wife, Selena, individually and on behalf of their minor children, Joni S. Johnson and Shannon A. Johnson, filed suit for damages. Initially, they named Lowes as defendant. Subsequently, *179 plaintiffs amended their petition, adding Briggs & Stratton as defendant. Lowes filed a third party demand against MTD.
Plaintiffs proceeded to trial against MTD and Briggs & Stratton. After plaintiffs presented their case, MTD moved for a directed verdict, which was granted without opposition. Plaintiffs' case was submitted to the jury against only Briggs & Stratton.
After the jury returned its verdict, the trial judge conducted a bench conference. He, then, stated, on the record, that the verdict form was not responsive. He gave the jury a second verdict form to complete. After further deliberations, the jury returned a second verdict. The trial court rendered judgment on the second verdict, finding the injuries suffered by plaintiffs were caused one hundred percent (100%) by the fault of Briggs & Stratton and zero (0%) percent by the fault of Johnny Johnson. Damages were awarded in the amount of $91,000.00 to Johnny Johnson; $10,000.00 to Joni Johnson for loss of consortium; and $10,000.00 to Shannon Johnson for loss of consortium. No damages were awarded to Selena Johnson for her own loss of consortium claim.
Briggs & Stratton appealed that judgment, urging seven assignments of error. Plaintiffs answered the appeal, urging two assignments of error. Our discussion requires us to address the assignments of error in an order other than that presented by the parties.

ASSIGNMENTS OF ERROR
On appeal, Briggs & Stratton urge the following assignments of error:
1) The evidence does not support the jury's conclusion that the engine was unreasonably dangerous when it left the custody of Briggs & Stratton.
2) The jury verdict was tainted and should be reversed because the trial improperly prohibited Briggs & Stratton from introducing evidence of the absence of other fires within the 3.3 million Model 25 vertical shaft Briggs & Stratton engines.
3) The jury verdict was tainted and should be reversed because the trial court failed to properly instruct the jury.
4) The trial court erred when it failed to enter a judgment in favor of Briggs & Stratton in accordance with the original special verdict returned by the jury.
5) The jury verdict awarding past and future medical expenses to Johnny Johnson is not supported by the evidence.
6) The damage awards in favor of Joni and Shannon Johnson are not supported by the evidence.
7) The trial court erred in assessing the expenses of storing the lawn mower as court costs.
Plaintiffs answered this appeal, alleging:
(1) The trial court erred by awarding inadequate damages to Johnny Johnson.
(2) The trial court erred by failing to award any damages to Selena Johnson for loss of consortium.

ADMISSIBILITY OF EVIDENCE OF THE ABSENCE OF OTHER FIRES
Briggs & Stratton contends the trial court abused its discretion in prohibiting Briggs & Stratton from introducing evidence that there have been no other fires within Briggs & Stratton Model 25 engines with a vertical shaft.
In their case, plaintiffs relied on a theory that the Briggs & Stratton engine was defectively designed in that the sump gasket slipped out of place allowing oil to leak from the sump. They, further, contended that improperly torqued bolts holding the sump to the bottom of the engine constituted a manufacturing defect. Briggs & Stratton admitted that the sump gasket on this engine would become dislodged due to the vibration of the mower and adhesive quality of the gasket. Briggs & Stratton asserted that this condition did not rise to the level of a defect and did not cause Johnson's accident.
In cases where defective design is alleged, history of accidents is relevant and has probative value in showing whether the design in question is unreasonably dangerous. Jurovich v. Catalanotto, 506 So.2d 662 (La.App. 5th Cir.), writ denied 508 So.2d 87 (La.1987); Foster v. Marshall, 341 So.2d *180 1354 (La.App. 2nd Cir.1977), writ denied 343 So.2d 1067, 1077 (La.1977). Evidence of the absence of prior accidents is relevant and admissible where the proper foundation is laid. See La.C.E. 401.
In the instant case, Lawrence Gruenberger of Briggs & Stratton testified that Johnson's mower was a Model 25 with a vertical shaft. He was prohibited from testifying that 3.3 million Model 25 vertical shaft engines were manufactured by Briggs & Stratton and that Briggs & Stratton had not received any reports, other than plaintiffs', of the occurrence of fires in association with the Model 25 with a vertical shaft. The trial court disallowed the testimony by sustaining plaintiffs' objection that the evidence was irrelevant. The trial court stated that this testimony was inadmissable because its probative value did not outweigh the danger of prejudice, citing La.C.E. art. 403.
We find the trial court abused its discretion in prohibiting Gruenberger's testimony. It was clearly probative and relevant on the issue of whether the design in question was unreasonably dangerous and the issue of causation. The danger of prejudice is outweighed by the probative value of the evidence in this case.
If the jury had been allowed to hear Gruenberger's testimony, it may have concluded that this testimony should have been disregarded in its entirety. If the jury elected to consider Gruenberger's testimony, it is uncertain how heavily the jury would have relied on the testimony. Thus, although the jury could have rendered the same verdict had it been allowed to hear the proffered testimony, we cannot say that the jury would have rendered the same verdict. See McLean v. Hunter, 495 So.2d 1298 (La.1986). Since the proffered testimony may indeed have changed the outcome of the trial, we find the jury verdict was tainted by the trial court's error and must be disregarded. McLean v. Hunter, 495 So.2d 1298 (La.1986).
When a finding of fact is interdicted and where the record is otherwise complete, the appellate court should make an independent review of the record and determine which party should prevail by a preponderance of the evidence, without affording any deference to the jury verdict. McLean v. Hunter, 495 So.2d 1298 (La.1986); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980).
In the present case, we find that the record is such that we can fairly find a preponderance of the evidence from the record on appeal; therefore, we will render judgment on the record.

LIABILITY
A plaintiff in a products liability suit must prove that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the defect caused the injury; and that the condition existed when the product left the control of the manufacturer or supplier. Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985). Plaintiff must prove each of these elements by a preponderance of the evidence.
The following pertinent testimony was presented at trial. Johnny Johnson testified that upon adding oil to the mower, he verified that he added the proper amount by checking the dipstick. Approximately one-half hour after he began mowing again, the motor began knocking. He saw smoke and a big cloud of fire that "looked like a welding torch" coming out of the exhaust. He turned the ignition off, but the engine did not stop. He, then, stood up to get off the mower. The mower "locked up" and he fell to the ground, landing on the left side of the mower, next to the exhaust. Immediately, he experienced a pulling sensation on the left side of his back and felt as though something in his back had snapped. The mower, then, stopped. A small flame continued to shoot out of the muffler. Johnson took off his shirt and smothered the flame by pushing his shirt into the muffler.
Plaintiffs' expert Harold Myers, a consulting engineer and expert in mechanical engineering and the cause and origin of fires, *181 viewed the mower. He concluded that, in all likelihood, a fire was emitted from the muffler of the lawn mower. This conclusion was based on a black smudge mark on the engine cowling directly over the muffler. He found no problems with the engine other than the deterioration and displacement of the sump gasket; however, he inspected the engine after the dipstick had been removed. He testified that the deterioration of the gasket would cause a loss of crankcase vacuum. He opined that oil probably got into the combustion chamber, collected in the muffler and, then, burned. His testimony was not definitive on the cause of the fire. He did state, however, that the problem with the sump gasket seemed to cause the fire.
Lawrence Schwall, an employee of the central service distributor for Briggs & Stratton, testified that the only evidence of a fire was some soot buildup or smudge. He ran the mower without difficulty. When he stood up, the engine cut off and coasted to a stop, indicating that the off-switch located in the seat was operational. When he turned the ignition off using the key, the engine stopped.
Thomas Hopen, an expert in the field of forensic sciences and in the examination and analysis of physical evidence, examined Johnson's shirt. Part of the shirt was charred and melted in a circular pattern. He stated that if the shirt had been subjected to open flame the inside of it would have been damaged. The inside of the shirt was not damaged. He opined that the damage to the shirt was due to contact with a hot surface. He stated, further, that the porthole areas of the muffler which correspond to the undamaged portion of the shirt, demonstrate that there was no open flame or flame in muffler at the time. Finally, he testified that, considering the fabric content of the shirt, the shirt could not have been used to snuff out a flame and not burn.
Lawrence Gruenberger, an expert in the field of mechanical engineering and in the causation of fires and an employee of Briggs & Stratton, examined the engine after the dipstick assembly had been removed. He testified that the off-switch located in the seat and ignition switch operated normally. Because there was no paint damage, he believed the mower had not caught fire. He stated that the problem of the displacement of the sump gasket was due mainly to vibrations. He opined that the loss of the sump gasket would cause the crankcase vacuum to decrease only slightly, and not to be totally lost. He stated that the oil would help seal the crack left by the displaced sump gasket. He noted the engine was adjusted to run rich and therefore, would burn oil and give off smoke. Because the engine was adjusted to run rich, he concluded there would not be adequate oxygen to complete combustion in the combustion chamber.
Gruenberger stated that if the dipstick cap or tube is not seated either because the dipstick cap is not screwed all the way down or the "O" ring is missing, there would be a reduction in the crankcase vacuum to almost no crankcase vacuum which would cause oil to get into the combustion chamber and into the exhaust portion of the engine.
Based on the evidence presented, we find that plaintiffs failed to prove by a preponderance of the evidence that the accident was caused by a defect in the engine manufactured by Briggs and Stratton. Therefore, Briggs & Stratton is not liable for plaintiffs injuries. In light of the foregoing, the remaining issues raised on appeal are pretermitted.
For the foregoing reasons, the judgment of the trial court is reversed and set aside. Judgment is hereby rendered in favor of Briggs & Stratton Corporation, dismissing plaintiffs' lawsuit against it with prejudice. Costs are assessed against plaintiffs.
REVERSED AND RENDERED.